Vernon Dale TRAVIS, Plaintiff,

v.

A.L. LOCKHART, Director Arkansas Department of Correction, Defendant.

James Gary WHITTINGTON, Plaintiff,

v.

A.L. LOCKHART, Director Arkansas Department of Correction, Defendant.

Nos. PB–C–84–309, PB–C–84–311.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

April 18, 1985.

Vernon Dale Travis and James Gary Whittington, plaintiffs, *pro se.*

the State was represented by the Attorney General's office.

## MEMORANDUM AND ORDER

ROY, District Judge.

The Court has received separate complaints from the above-named plaintiffs, who are currently confined at the Tucker Maximum Security Unit of the Arkansas Department of Correction. Plaintiffs allege that their First Amendment rights are being violated by the Department's policy of scanning both incoming and outgoing mail directed to and received from media representatives. Plaintiffs assert that the Department's policy of reading media mail has resulted in suppression of criticism of the correctional institution and institution officials. The defendant denies that the Department has a policy of reading either incoming or outgoing mail, but affirmatively states that all non-privileged mail is subject to being checked for contraband materials and is occasionally scanned for reasons of institutional security.

Upon a review of the plaintiffs' complaints, it was determined that because of the commonality of the issues involved, and in the interest of judicial economy, the most appropriate method of considering the allegations raised by plaintiffs would be to conduct a joint hearing. An evidentiary hearing was conducted by United States Magistrate Robert W. Faulkner on January 29, 1985, in Pine Bluff, Arkansas. Plaintiffs appeared *pro se,* while the defendant was represented by Deputy Attorney. General A. Carter Hardage.

At the hearing, inmate Travis testified that he believed that he has a right to uncensored correspondence with members of the media. Currently, the Department's policy regarding general correspondence provides that inmates place their unsealed letters in the mailbox for inspection of contraband. Incoming general correspondence is opened by prison officials and also checked for contraband materials prior to the inmate's receipt of his mail. Inmate Travis stated that he has sent several letters to the *Arkansas Democrat* for publication in the "Voices" column. Inmate Travis also stated that only the letters that he sent through third parties, including an attorney and legal organizations, have been printed. He suggested that officials may have tampered with some of his letters because the letters were critical of the correctional institution, its policies, and its officials. On cross-examination, inmate Travis testified that he did not have any copies of the letters which he intimated were withheld from the mail by prison officials, and acknowledged that not all letters sent to the "Voices" column were ultimately printed. The defendant offered into evidence copies of several of inmate Travis' letters (Defendant's Exhibits 1–5) which were published in the *Arkansas Democrat* newspaper.

Inmate James Gary Whittington testified that he had corresponded with reporter Ted Gup of the *Washington Post* in September and October of 1984 and had mailed several letters to him through third parties. He also testified that he had sent several letters to the *Arkansas Democrat* through third parties. Defendant's Exhibits 6–9 are copies of inmate Whittington's letters which have been published in the "Voices" column of the *Arkansas Democrat.* Inmate Whittington stated that he attempted to send a sealed letter to a media representative and that it was returned to him. He also stated that having to send mail

through a third party because of his concern for censorship caused a delay in the receipt of his mail and that he believed that correspondence with media sources should fall in the privileged mail category.

Larry Norris, Warden of the Tucker Maximum Security Unit, testified regarding the Department's mail policy. (See Defendant's Exhibit 10 for the Department's administrative regulations.) He testified that neither Travis nor Whittington had ever complained to him about problems regarding any correspondence to media sources. He also testified that neither Mr. Gup nor any other member of the press had requested permission to interview inmate Travis or Whittington, nor had they filed an application with the Arkansas Department of Correction to do so. Warden Norris stated that mail sent to and received from members of the press is not censored and that the reason that such mail is required to be unsealed is for purposes of inspection for contraband. He stated that the Department's policy regarding all general mail, which includes media mail, is to have the mail opened and inspected by the prison's mail officer and then distributed to the inmates.

Director Lockhart testified that legal mail is entitled to a higher degree of privacy and security than mail sent to media representatives. He further testified that the prison's mail officer can refer to a list of attorneys and courts to ensure that mail marked as legal mail is in fact legal mail, while no such list is available for reference in determining media sources. He opined that there was no less restrictive means of dealing with media mail than the present method and that it would be more burdensome on the institution and its personnel to handle media mail like legal mail. Mr. Lockhart further opined that changing the policy regarding the handling of media mail would not aid in rehabilitation or increase safety measures for inmates. On cross-examination, he testified that the mail has been used to introduce contraband materials, including drugs, money, and weapons,

into the prison. Director Lockhart stated that the Department's policy regarding interviews with inmates is to check the status of the inmate in regards to potential security problems, then check with the inmate and his attorney to see if they would consent to be interviewed.

██ The case law regarding privileged mail is clear that privileged prisoner mail may not be opened for inspection of contraband except in the presence of the inmate. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Privileged mail has been defined in this circuit as mail to or from an inmate's attorney which is identified as such. The definition of legal mail also includes mail to or from the courts. *Jensen v. Klecker,* 648 F.2d 1179, 1182 (8th Cir.1981). Other circuits have included mail sent to and received from medial sources in the privileged mail category. *Seattle-Tacoma Newspaper Guild, Local #82, of American Newspaper Guild, et al. v. Parker,* 480 F.2d 1062 (9th Cir.1973); *Guajardo v. Estelle,* 580 F.2d 748 (5th Cir.1978). In *Guajardo, supra,* the Court found that prison officials were properly required to allow inmates to send media mail unopened and to receive media mail that would be opened only for inspection of contraband in the inmate's presence, provided that prison authorities had reasonable time, when necessary, to verify that an addressee was actually a member of a media organization.

A recent case also held that a prison regulation which permitted personnel from the Department of Correction to inspect mail from residents in administrative segregation sent to media representatives infringed on First Amendment rights of both residents and the press by raising the possibility of censorship, and that inspection was not justified to check for contraband leaving the correction facility. *Burton v. Foltz,* 599 F.Supp. 114 (E.D.Mich.1984). In *Foltz,* the District Court noted that residents in the general population are specifically allowed to send uncensored correspon-

dence to media representatives, citing *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and *Guajardo, supra,* for the contention that persons in custody have a constitutional right to have mail sent to members of the media unopened, 599 F.Supp. at 116–117.

■ The testimony elicited from the defendant and Warden Norris noted that it would be possible to send media mail in the same manner as legal mail by having inmates show the mail officer their opened envelope and correspondence and then seal it. The Court notes that unhindered communication between prison inmates and the media protects important interests of the inmates, the press, and the general public. The Supreme Court has held that the media has "a First Amendment right to receive letters from inmates criticizing jail officials and reporting on conditions." *Houchins v. KQED, Inc.,* 438 U.S. 1, 15, 98 S.Ct. 2588, 2597, 57 L.Ed.2d 553 (1978). "Allowing inspection of media mail will chill open communication by these residents with the media since it allows critics to be identified, creating fear of reprisals." *Procunier, supra,* 416 U.S. at 424, 94 S.Ct. at 1816 (Justice Marshall, concurring). The Court finds that handling media correspondence like legal mail would not place an impermissible burden on prison personnel. Further, after balancing the considerations of an increased workload on mailroom personnel against the First Amendment rights of prison residents, the Court is convinced that the interest in protecting unrestricted media correspondence outweighs any possibility of additional duties being placed on prison personnel.

The Court finds that although the plaintiffs have failed to provide sufficient proof to support their claims for injunctive relief, declaratory relief is appropriate, and IT IS HEREBY ORDERED that the Arkansas Department of Correction adopt policies or regulations in conformity with this Memorandum and Order concerning mail sent to and received from media representatives.