IN THE MATTER OF RULES ADOPTION REGARDING INMATE MAIL TO ATTORNEYS, PUBLIC OFFICIALS, AND NEWS ME- DIA REPRESENTATIVES [N.J.A.C. 10A:18–1.3, 18–2.7, 18–2.8, 18–3, 18–4.7.

Superior Court of New Jersey
Appellate Division

Argued April 4, 1989—Decided April 27, 1989.

---

[3]We have learned from defendant's reply brief that his mother has com- menced an action to obtain legal custody of the child.  The parties, both named as defendants in that proceeding, have apparently been personally served in Jersey City.

Before Judges PRESSLER, O'BRIEN and SCALERA.

*Catherine A. Hanssens,* Assistant Deputy Public Defender, Office of Inmate Advocacy, argued the cause for appellant Public Advocate of New Jersey (*Alfred A. Slocum,* Public Advocate and Public Defender, attorney, *Catherine A. Hanssens,* of counsel and on the brief).

*Catherine M. Brown,* Deputy Attorney General argued the cause for respondent Commissioner (*Peter N. Perretti, Jr.,* Attorney General, *Michael R. Clancy,* Assistant Attorney General, of counsel, *Catherine M. Brown,* on the brief).

The opinion of the court was delivered by

SCALERA, J.A.D.

This appeal challenges a portion of the regulations governing state prisoner mail which were adopted and codified by *N.J.A.C.* 10A:18–1 through 18–4 and, more specifically, 10A:18–1.3, 18–2.7, 18–2.8, 18–3 and 18–4.7.

On January 5, 1987 the New Jersey Department of Corrections (Commissioner or Department) proposed codification of what is represented to have been the preexisting institutional practices regarding mail, visits and telephone rights of State prisoners. 19 *N.J.R.* 214. Although no public hearings were held, written comments were solicited and submitted by the Public Advocate's office and other interested individuals. On June 5, 1987, following receipt thereof, certain modifications were made and the regulations were adopted. 19 *N.J.R.* 1214. As a result the Public Advocate filed this appeal.

On August 25, 1988 the Department moved for a temporary remand to permit it voluntarily to modify certain of those regulations. This court denied that motion, specifying that the denial was "without prejudice to the Department taking such further action respecting the challenged rules as it chooses." Thereafter, on February 6, 1989, the Department proposed amendments to some of the challenged regulations by enlarging the definition of "legal correspondence" to include the federal counterparts of the State officials listed in *N.J.A.C.* 10A:18–2.7(b) and to delete the objectionable provisions of 4.7(d) pertaining to "publications." 21 *N.J.R.* 277. As a result of these proposed modifications, whose effective date is April 19, 1989, this appeal is confined to a consideration of the challenged regulations not affected thereby.

*N.J.A.C.* 10A:18–1 *et seq.* establishes guidelines for inmate correspondence with persons or entities outside the correctional facility and the processing of such mail. It is divided into four categories: correspondence, legal correspondence, publications and packages. Correspondence is defined generally, *N.J.A.C.*

10A:18–1.3.  The second category, "legal correspondence" includes the exchange of letters between an inmate and:

1. An attorney ... when properly identified as such on the outside of the envelope;
2. A State Public Defender;
3. Office of the Public Advocate;
4. Attorney General's office;
5. Federal and State courts;
6. Federal and State court judges;
7. Offices of Legal Services;
8. Legal assistance clinics ...
9. Administrative Office of the Courts;
10. Prosecutors' offices;
11. Federal Public Defender;
12. Department of Corrections' Internal Affairs Unit;
13. Department of Corrections' Ombudsmen; and
14. Office of Administrative Law.

[*N.J.A.C.* 10A:18–1.3]  The third category, "Publications," comprises other material including books, magazines, and newspapers.  *N.J.A.C.* 10A:18–4.1 *et seq.*  Finally, regulations regarding "packages" are codified in *N.J.A.C.* 10A:18–5.3.  Mail is further classified as either "incoming" or "outgoing" and is processed pursuant to separate regulations governing these classifications.

All "incoming correspondence" other than legal correspondence is opened and inspected for contraband, but is not read unless there is reason to believe that it contains "disapproved content and then only upon the prior authorization of the superintendent or his or her designee."  *N.J.A.C.* 10A:18–2.6(e).  Correspondence is considered disapproved if:

1. The correspondence (or publication) contains material which is detrimental to the security and/or order of the correctional facility because it incites violence based upon race, religion, creed or nationality and a reasonable inference can be drawn, based upon the experience and professional expertise of correctional administrators, that it may result in the outbreak of violence within the facility;
2. The correspondence (or publication) contains information regarding the manufacture of:
   i. Explosives;
   ii. Weapons;

   iii.  Controlled dangerous substances;

   iv.  Escape plans;

   v.  Lockpicking; or

   vi.  Anything of a similar nature.

3. The correspondence (or publication) contains information which appears to be written in code;

4. The correspondence (or publication) contains information concerning activities within or outside the correctional facility which would be subject to criminal prosecution under the law of New Jersey or the United States;

5. The correspondence (or publication) incites violence or destructive or disruptive behavior toward:

   i.  Law enforcement officers;

   ii.  Department of Corrections personnel; or

   iii.  Correctional facility programs or procedures.

6. The correspondence (or publication) contains material which, based upon the experience and professional expertise of correctional administrators and judged in the context of a correctional facility and its paramount interest in security, order and rehabilitation;

   i.  Taken as a whole, appeals to a prurient interest in sex;

   ii.  Lacks, as a whole, serious literary, artistic, political or scientific value; and

   iii.  Depicts, in a patently offensive way, sexual conduct including patently offensive representations or descriptions of ultimate sexual acts, masturbation, excretory functions, lewd exhibition of the genitals, sadism or masochism. *N.J.A.C.* 10A:18–2.14 (correspondence and legal correspondence) *N.J.A.C.* 10A:18–4.9 (publications).

Incoming correspondence classified as "legal correspondence," however, is opened and inspected for contraband only in the presence of the inmate to whom it is addressed and may not be read or copied. *N.J.A.C.* 10A:18–3.4(a)(b)(c). If there is a "substantial reason to believe that the incoming correspondence is not legal in nature or that it contains disapproved content ..." it is referred to the Deputy Commissioner. *N.J.A.C.* 10A:18–3.4(e).

"Outgoing correspondence" is not opened or censored at all if it is either legal correspondence (*N.J.A.C.* 10A:18–3.2) or is addressed to:

  1.  The Governor of New Jersey;

  2.  Members of the State Legislature;

  3.  Members of the Parole Board; or

  4.  The Commissioner.

*N.J.A.C.* 10A:18–2.7(b).[1] All other outgoing correspondence is opened, read or censored only if there is reason to believe that it contains disapproved content. *N.J.A.C.* 10A:18–2.7(c).

All incoming publications are opened and "inspected for contraband, but shall not be read unless there is reason to believe that the publication contains disapproved content ... and then only upon the prior authorization of the superintendent or his or her designee." *N.J.A.C.* 10A:18–4.5(a). Outgoing publications are reviewed to determine the sender and if he or she cannot be identified, the outgoing publication is destroyed. *N.J.A.C.* 10A:18–4.7. Outgoing publications shall not be opened, read or censored if addressed to specified officials. *N.J.A.C.* 10A:18–4.7(d). Outgoing publications addressed to anyone else "shall not be opened, read or censored unless there is reason to believe that the publication contains disapproved content ... and then only with the prior approval of the superintendent or his or her designee." *N.J.A.C.* 10A:18–4.7(e).

All incoming and outgoing packages are opened and searched for contraband. *N.J.A.C.* 10A:18–5.3(a); *N.J.A.C.* 10A:18–5.-4(a).

As noted, on February 6, 1989 the Department initiated proposed amendments to *N.J.A.C.* 10A:18–2.7(b) and 10A:18–4.-7(d) to expand the list of outgoing mail which would not be opened, read or censored under *N.J.A.C.* 10A:18–2.7(b) to include: 1) the President of the United States; 2) the Vice-president of the United States; 3) Members of Congress; 4) Members of the Federal Parole Board; and 5) the Director of the Federal Bureau of Prisons. 21 *N.J.R.* 277–278. Thus, opening, reading or censoring of outgoing publications is authorized only if "there is reason to believe the publication contains disapproved content and then only with the prior approval of the

---

[1]This is one of the regulations which has been proposed to be amended to expand the list to include comparable federal officials.

superintendent or his or her designee." It would seem then that a portion of appellant's complaints have been resolved.

Appellant argues basically that these rules in other respects "arbitrarily and irrationally distinguish among senders and recipients of official mail and publications in determining when confidentiality will apply" and challenges the pertinent regulations insofar as they allow prison personnel to open and read mail between a prisoner and public officials or news media representatives. He contends that both such incoming and outgoing correspondence should be treated as privileged "legal correspondence" which would mean that such outgoing correspondence shall not be opened, read or censored at all and such incoming correspondence shall be opened and checked for contraband only in the presence of the inmate addressee.

Our attention is first directed to the appropriate standard of review of prison regulations which restrict freedom of speech. Appellant contends that the appropriate standard is the "least restrictive alternative" test outlined by the United States Supreme Court in *Procunier v. Martinez*, 416 *U.S.* 396, 413–414, 94 *S.Ct.* 1800, 1811, 40 *L.Ed.*2d 224 (1974). The Commissioner insists that the United States Supreme Court in *Turner v. Safley*, 482 *U.S.* 78, 107 *S.Ct.* 2254, 96 *L.Ed.*2d 64 (1987), refused to decide what degree of scrutiny applies to a prison regulation which affects the substantive constitutional rights of non-prisoners as well as prisoners and that it is not necessary for this court to reach that decision because even when analyzed in terms of traditional first amendment law, "the reasonable basis test" is to be used.

In *Procunier v. Martinez, supra,* a class action was brought by the inmates of a California penal institution challenging state prison regulations which permitted the censoring of incoming and outgoing mail and banned law students or legal paraprofessionals from conducting attorney-client interviews. 416 *U.S.* at 399–400, 94 *S.Ct.* at 1804–05, 40 *L.Ed.*2d at 240. The regulations permitting censorship of an inmate's mail authorized censorship

of statements that "unduly complain" or "magnify grievances" ... "express inflammatory political, racial, religious or other views or beliefs ..." and precluded inmates from sending or receiving "letters that pertain to criminal activity; are lewd, obscene, defamatory, contain foreign matter or are otherwise inappropriate." *Id.* There the Supreme Court specifically addressed the criteria for censorship of prisoner mail:

First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

[416 *U.S.* at 413, 94 *S.Ct.* at 1811]

Nevertheless the Commissioner argues that the United States Supreme Court has not yet decided the appropriate standard of review to be used "[w]hen a prison regulation affects the substantive constitutional rights óf non-prisoners as well as prisoners ..." and that it specifically left that question open in *Turner v. Safley, supra.*

However, *Martinez* clearly indicates that the Court did resolve the issue here because that case dealt with the issue of inmate to non-inmate correspondence and indicated that this type of mail censorship "implicates more than the rights of prisoners." *Martinez,* 416 *U.S.* at 408, 94 *S.Ct.* at 1809, 40 *L.Ed.*2d at 237. The Court went on to state that:

Communications by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each. Whatever the status of a prisoner's claim to uncensored correspondence with an outsider, it is plain that the latter's interest is grounded in the First Amendment's guarantee of freedom of speech. And this does not depend on whether the nonprisoner correspondent is the author or intended recipient of a particular letter, for the addressee as well as the sender of direct

personal correspondence derives from the First and Fourteenth Amendments a protection against unjustified governmental interference with the intended communication.

[416 *U.S.* at 408–409, 94 *S.Ct.* at 1809, 40 *L.Ed.*2d at 237 (citations omitted)]. Thus it was there concerned with any regulation which caused a "consequential restriction on the First and Fourteenth Amendment rights of those who are not prisoners." 416 *U.S.* at 409, 94 *S.Ct.* at 1809.

On the other hand, *Turner v. Safley, supra,* involved a challenge to two Missouri prison regulations, the first of which dealt solely with correspondence between inmates at different institutions. The *Turner* Court went on to set forth the appropriate standard to govern "when a prison regulation impinges on inmates' constitutional rights" (as opposed to regulations effecting nonprisoners' rights) and determined that such a regulation is "valid if it is reasonably related to legitimate penological interests." 482 *U.S.* at 89, 107 *S.Ct.* at 2261, 96 *L.Ed.*2d at 79. The issue which the Court refused to tackle in *Turner* was the standard of review for the Missouri regulation which prohibited inmates from marrying without the permission of the superintendent of prisons.

We note that various lower federal courts have addressed the issue of whether inmate correspondence with the media and governmental agencies should be treated as privileged mail and thus afforded the same protections as legal correspondence. *Mann v. Adams,* 846 *F.*2d 589 (9th Cir.1988); *Guajardo v. Estelle,* 580 *F.*2d 748 (5th Cir.1978); *Taylor v. Sterrett,* 532 *F.*2d 462 (5th Cir.1976); *Travis v. Lockhart,* 607 *F.Supp.* 1083 (D.C.Ark.1985); *Burton v. Foltz,* 599 *F.Supp.* 114 (E.D.Mich. 1984); *Burnham v. Oswald,* 342 *F.Supp.* 880 (W.D.N.Y.1972).

In *Taylor v. Sterrett, supra,* the Fifth Circuit Court of Appeals held that "opening and reading outgoing mail to government agencies is not significantly related to the advancement of jail security." 532 *F.*2d at 480. Regarding incoming mail from government agencies, the *Taylor* court determined that it should be treated "in accordance with the procedures for

mail from legal correspondents...." 532 *F.*2d at 481. The *Taylor* court also observed that the jail officials there had "not demonstrated that alternative methods of eliminating the danger posed by [media] mail were unavailable" and imposed guidelines for the inspection of incoming and outgoing "media mail." 532 *F.*2d at 482.

Two years later, in *Guajardo v. Estelle, supra,* the Fifth Circuit Court of Appeals addressed the constitutionality of correspondence rules and practices promulgated by the Texas Department of Corrections which included, among other things, restrictions upon inmate correspondence with the media. The *Guajardo* court held that outgoing media mail must be sent sealed and uninspected subject to allowing prison officials a reasonable time to verify that the addressee is actually a member of a media organization. It further held that the inspection of incoming mail from media representatives would be limited to inspection for contraband only in the presence of the inmate addressee. 580 *F.*2d at 759. Like the Texas Department of Corrections in *Guajardo,* the New Jersey Department of Corrections has established regulations governing "legal correspondence," and if media correspondence is treated in a similar manner, the same result will obtain.

The *Guajardo* court found support for its holding in *Taylor v. Sterrett, supra,* and *Pell v. Procunier,* 417 *U.S.* 817, 94 *S.Ct.* 2800, 41 *L.Ed.*2d 495 (1974). In *Pell,* the Supreme Court considered a prison regulation which barred media representatives from conducting face-to-face interviews with particular inmates. Observing that outgoing correspondence to the press went unopened and incoming correspondence from the press was inspected only for contraband, the *Pell* court upheld the restriction on face-to-face interviews because the uncensored mail correspondence procedures constituted a reasonable alternative to the prohibited interviews. 417 *U.S.* at 823–835, 94 *S.Ct.* at 2804–2810, 41 *L.Ed.*2d at 502–509. Consistent with that view, the *Guajardo* court held inmate press correspondence to be privileged:

An informed public depends upon accurate, effective reporting by news media. In refusing to block inmate-press correspondence and in protecting it from censorship we protect not only the interest of the inmates, but that of the public at large, and we move the decisions related to prison conditions out of the federal courthouse and into the public forum where they belong. *Nolan v. Fitzpatrick,* 451 *F.*2d 545 (1 Cir.1971). We point out that the district court's decision does not permit wholesale sending and receiving of mail to any address purporting to be that of a media representative. The prison authorities may have a reasonable time, when necessary, to verify that the addressee reflected on the face of an envelope is actually a member of the editorial or reporting staff of a media organization. If TDC [Texas Department of Corrections] officials have reason to believe that a particular prisoner or media representative is using the mail to violate the law or threaten security, they may, upon a showing of probable cause, obtained a search warrant to read and open the mail. *See Taylor v. Sterrett, supra; Palmigiano v. Travisono,* 317 *F.Supp.* 776 (D.R.I.1970). [*Guajardo,* 580 *F.*2d 748 (1978)].

The Fifth Circuit's holding in *Guajardo* was cited with approval in *Burton v. Foltz,* 599 *F.Supp.* 114 (E.D.Mich.1984) and was also followed in *Travis v. Lockhart,* 607 *F.Supp.* 1083 (D.Ark.1985). The *Travis* court also pointed out "that handling media correspondence like legal mail would not place an impermissible burden on prison [mailroom] personnel." *Id.* at 1086.

Recently, however, in *Mann v. Adams, supra,* the Ninth Circuit Court of Appeals broke with the Fifth Circuit ruling on media correspondence and mail from public officials. *Mann* dealt with an Arizona State prisoner's claim that incoming mail from public agencies, public officials, recognized civil rights groups and the news media should be opened only in the inmate's presence. 846 *F.*2d at 590. The *Mann* court affirmed the district court's summary judgment in favor of the State officials stating, that the *"Guajardo* decision was questionable at the time it was decided due to its interpretation of *Pell"* and that in the years following the *"Guajardo* decision the Supreme Court has emphasized security considerations in upholding greatly restrictive regulations, even as to pretrial detainees." *Id.* at 591. (*citing Turner, supra,* and *O'Lone v. Estate of Shabazz,* 482 *U.S.* 342, 107 *S.Ct.* 2400, 96 *L.Ed.*2d 282 (1987)), (upholding prison regulation preventing Muslim prisoner

from attending weekly services mandated by Koran); *Block v. Rutherford*, 468 *U.S.* 576, 104 *S.Ct.* 3227, 82 *L.Ed.*2d 438 (1984) (upholding prison's ban on contact visits, even as to pretrial detainees); *Hudson v. Palmer*, 468 *U.S.* 517, 104 *S.Ct.* 3194, 82 *L.Ed.*2d 393 (1984) (prisoners have no right of privacy in prison cells entitling them to fourth amendment protection against unreasonable searches); *Bell v. Wolfish*, 441 *U.S.* 520, 99 *S.Ct.* 1861, 60 *L.Ed.*2d 447 (1979) (upholding strip searches and visual inspection of body cavities of prisoners having contact visits with persons outside prison). Without going into a detailed analysis, suffice it to say that, in our view, the *Mann* court's reliance on these recent Supreme Court cases is misplaced and the decision in *Guarjardo* reflects the proper standard and rationale to be applied based upon *Procunier v. Martinez, supra.*

The Commissioner claims, however, that if media correspondence is treated like "legal correspondence" and "the category of legal mail was expanded to include any correspondence with the media or with any official of the State or federal legislative or executive branches, the ability of the Department to process legal mail in a timely manner would be adversely affected inasmuch as every piece of mail is to be opened in the presence of the inmate." Thus, it argues, the Department would be unable to deliver mail of a truly legal character in a timely manner. It also contends that appellant's position does not further "the substantial governmental interests of security, order or rehabilitation" and goes further than is "necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 *U.S.* at 397, 94 *S.Ct.* at 1803, 40 *L.Ed.*2d at 225. We do not agree.

As was said in *Travis v. Lockhart, supra,*

handling media correspondence like legal mail would not place an impermissible burden on prison personnel. Further, after balancing the considerations of an increased workload on mailroom personnel against the First Amendment rights of prison residents, the Court is convinced that the interest in protecting unrestricted media correspondence outweighs any possibility of additional duties being placed on prison personnel. [607 *F.Supp.* at 1084].

Reduced to its simplest terms the justification for regulations governing prisoner correspondence undoubtedly rests on the institution's need to (1) prevent the smuggling of contraband, (2) check for escape plans, plans to harm someone or plans for some other criminal activity and (3) prevent material from reaching inmates that might incite violence or insurrection. Since the concern is for preventing contraband from entering the prison rather than leaving it, such outgoing mail need not be inspected. Thus, only incoming mail needs to be checked for contraband. In addition, it is highly unlikely (although possible) that members of the media, public officials or persons in governmental agencies would aid prisoners in escaping, becoming involved in other criminal activity or would send them material likely to incite violence or insurrection.

In sum, we feel that the reasoning expressed by the *Guajardo* court regarding media correspondence is persuasive:

> An informed public depends upon accurate, effective reporting by news media. In refusing to block inmate-press correspondence and in protecting it from censorship we protect not only the interest of the inmates, but that of the public at large, and we move the decisions related to prison conditions out of the federal courthouse and into the public forum where they belong. [*Guajardo v. Estelle*, 580 *F*.2d at 759].

In essence, we conclude that incoming correspondence from these persons should be inspected for contraband only in the presence of the inmate addressee, with the caveat that individuals or agencies who send mail to a prisoner may be required to properly identify themselves and their status before the mail reaches the prisoner. Finally, outgoing mail to these groups should not be opened or read, but prison officials should be allowed a reasonable time to ascertain that the addressee is a legitimate member of the press, a public official or a proper governmental agency.

Thus, to the extent the regulations here prevent correspondence with the media, public officials and governmental agencies from being treated as "legal correspondence," they are hereby invalidated and the matter is remanded for reconsideration thereof in light of our comments herein. In all other

respects the contested regulation, as modified by the Commissioner's amendment, is affirmed.